UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER M. BERNEGGER,

        *Plaintiff*,

    v.

EXECUTIVE OFFICE FOR UNITED
STATES ATTORNEYS,

        *Defendant*.

Civil Action No. 18-908 (RDM)

## MEMORANDUM OPINION

Peter M. Bernegger, proceeding *pro se*, brings this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, action against the Executive Office for United States Attorneys ("EOUSA"). *See* Dkt. 1. In the request underlying this action, Bernegger sought "the complete and total file" related to his prosecution and conviction for mail and bank fraud in the Northern District of Mississippi. Dkt. 34-3 at 2. The EOUSA has moved for summary judgment on the grounds that Bernegger has neither paid the duplication fees associated with his request nor identified any basis to upset the agency's denial of a fee waiver. Dkt. 34. For the reasons that follow, the Court will **GRANT** the EOUSA's motion.

### I. BACKGROUND

**A.    Factual Background**

In 2009, a jury in the Northern District of Mississippi convicted Bernegger of mail and bank fraud. *See Bernegger v. Exec. Off. for United States Att'ys*, 334 F. Supp. 3d 74, 82 (D.D.C. 2018). Bernegger was sentenced to 70 months in prison and ordered to pay $2.1 million in restitution. *See United States v. Bernegger*, 661 F.3d 232, 236 (5th Cir. 2011) (per curiam). In

the years that followed, "Bernegger filed multiple lawsuits seeking to expose the 'corrupt[ion,]' 'misconduct,' 'fraud,' and 'lies' of nearly 20 people involved in his criminal case, including judges, judicial staff, state officials, and prosecutors." *Bernegger*, 334 F. Supp. 3d at 82 (quoting *In re Bernegger*, No. 3:15-cv-182, 2015 WL 8347587, at *8–10 (N.D. Miss. Dec. 8, 2018)). After nearly a decade of litigation of this kind, the Northern District of Mississippi "impose[d] a sanction"—a pre-filing screening requirement—"designed to curb Mr. Bernegger's penchant for abusing judicial process by filing frivolous and malicious pleadings, motions, and communications with the court." *In re Bernegger*, 2015 WL 8347587, at *11–12.

Before this Court, Bernegger has filed two lawsuits regarding FOIA and Privacy Act requests related to his prosecution. Bernegger filed the first in March 2017 regarding a FOIA and Privacy Act request to the EOUSA seeking "all emails and/or other electronic communications" of four Assistant U.S. Attorneys who worked on his case. *Bernegger*, 334 F. Supp. 3d at 82–83. This Court granted in part and denied in part the EOUSA's motion for summary judgment on September 20, 2018, concluding that the EOUSA had yet to carry its burden of justifying two sets of withholdings. *Id.* at 95. The Court resolved both outstanding issues in favor of the EOUSA after the EOUSA submitted an unredacted version of an email for *in camera* review, *see* Minute Order, *Bernegger v. Exec. Off. for United States Att'ys*, No. 17-cv-563 (D.D.C. Sept. 28, 2018), and then renewed its motion for summary judgment with further justifications for its remaining withholdings, *see* Mem. Op. and Order, *Bernegger v. Exec. Off. for United States Att'ys*, No 17-cv-563 (D.D.C. Aug. 26, 2019).

This is the second FOIA and Privacy Act suit filed by Bernegger in this Court. In the request underlying this action—submitted on December 11, 2015—Bernegger sought "the complete and total file" for his case from the U.S. Attorney's Office for the Northern District of

2

Mississippi. Dkt. 34-3 at 2 (Ex. 2 at 2). This included, according to Bernegger, "all, any[,] and every . . . hardcopy printed document, note, transcript, fax, email, record, file, exhibit, communication, letter, memorandum, work product, [and] attorney work product" for each prosecutor on his case, along with "all, any[,] and every . . . grand jury form/document/paper, . . . the full grand jury transcript" and "each/every/all documents given to the grand jury and also received back from the grand jury." *Id.* Bernegger's request also encompassed "[a]ll, any[,] and every electronic data/information/record/information/record/file such as but not limited to[] photographs, computer tapes, videos, emails, file[s], record[s], [and] notes." *Id.*

The EOUSA acknowledged this request on January 14, 2016, Dkt. 34-3 at 4 (Ex. 2 at 4), and sent the request to the U.S. Attorney's Office for the Northern District of Mississippi "to perform a search for responsive records," Dkt. 34-2 at 4 (Hudgins Decl. ¶ 7). On June 22, 2016, the EOUSA informed Bernegger that the agency had identified "approximately 8,950 pages of records that [were] potentially responsive" to his request. Dkt. 34-3 at 8 (Ex. 2 at 8). The estimated duplication fees associated with processing those records totaled $442.50 because Bernegger would "receive the first 100 pages" without charges and would be charged $0.05 a page for the remaining 8,850 pages. *Id.* (8,850 x .05 = 442.50). The EOUSA further explained that because the estimated fees exceeded $250.00, Bernegger would need to make "an advance payment" of $442.50 "before [the EOUSA would] continue processing [his] request." *Id.* (citing 28 C.F.R. § 16.10(i)). That letter also apprised Bernegger of his right to appeal the agency's fee estimate. *Id.* at 9 (Ex. 2 at 9).

Bernegger did so on March 9, 2017, filing an appeal with the relevant administrative body, the Office of Information Policy ("OIP"). *Id.* at 12 (Ex. 2 at 12). Bernegger advanced three arguments in favor of a fee waiver. First, according to Bernegger, the requested records

3

were needed for a "criminal investigation" into one of his prosecutors, whom Bernegger maintained had been "caught lying and cheating in federal court in another case." *Id.* Second, Bernegger claimed that "3 news media outlets . . . wish[ed] to conduct a story on [that prosecutor's] fraud and lies." *Id.* Third, Bernegger "need[ed] the information sought to prove" what he had claimed about that prosecutor "in regards to a criminal complaint [he] filed with the proper federal authorities." *Id.* Rather than resolve these arguments in the first instance, the OIP remanded the matter to the EOUSA to address them. *Id.* at 20–21 (Ex. 2 at 20–21).

On remand, the EOUSA found Bernegger's arguments insufficient to warrant a waiver of the otherwise applicable fees. *Id.* at 23–24 (Ex. 2 at 23–24). As the EOUSA noted, a request for a fee waiver requires showing that "disclosure of the [requested] information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Under the relevant regulations, disclosure is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." 28 C.F.R. § 16.10(k)(2). In making this determination, "[a] requester's expertise in the subject area as well as the requester's ability and intention to effectively convey information to the public must be considered." *Id.* § 16.10(k)(2)(ii)(B).

Applying these standards, the EOUSA concluded Bernegger had failed to make several required showings. *See* Dkt. 34-3 at 23–25 (Ex. 2 at 23–25). Bernegger had not, according to the EOUSA, "shown with any specificity what, if any, informative value is contained in the records [he was] seeking and how that information [wa]s likely to contribute to the public's understanding of a specific operation or activity of the government," much less that it would "contribute[] in a 'significant' way." *Id.* at 24 (Ex. 2 at 24). Bernegger also failed to

4

demonstrate his "ability to disseminate the requested records to the public." *Id.* "Accordingly," the EOUSA concluded, his "request must be denied," and so directed Bernegger to prepay the required fees. *Id.*; *see also id.* at 26–27 (Ex. 2 at 26–27).

Bernegger again appealed to the OIP. *Id.* at 33–34 (Ex. 2 at 33–34). This time, however, the OIP denied his appeal. *Id.* at 44 (Ex. 2 at 44). Like the EOUSA, the OIP concluded that Bernegger "failed to explain how providing [the requested] information [would] contribute significantly to public understanding of the operations and activities of the government." *Id.* The OIP acknowledged Bernegger's argument "that federal prosecutors tampered with a grand jury," but noted that "unsupported allegations of government misconduct do not demonstrate that requested records are 'meaningfully informative' of government operations." *Id.* (quoting *Klein v. Toupin*, No. 05-cv-647, 2006 WL 1442611, at *4 (D.D.C. May 24, 2006)). Nor, the OIP continued, had Bernegger demonstrated that he "intend[ed] (and [was] able to) disseminate the records sought to an interested segment of the public." *Id.*

Notwithstanding that determination, Bernegger "failed to provide advance payment." Dkt. 34-2 at 6 (Hudgins Decl. ¶ 18). The EOUSA, accordingly, issued a letter on August 23, 2017, informing Bernegger that his request would "remain closed" and that the letter represented "the final action" on that request," Dkt. 34-3 at 31 (Ex. 2 at 31).

**B.   Procedural History**

Bernegger filed this suit on April 17, 2018, alleging that the EOUSA had not adequately responded to his FOIA request. *See* Dkt. 1. After the EOUSA answered the complaint on September 19, 2018, Dkt. 12, the Court directed the parties to "submit a joint status report proposing a schedule for further proceedings," Minute Order (Sept. 25, 2018). Rather than submit such a schedule, Bernegger "request[ed] a jury trial . . . to address massive fraud by [his]

prosecutor" in the Northern District of Mississippi, Dkt. 14 at 1, and subsequently filed a litany of motions, including a motion for discovery, Dkt. 16, a motion to find the EOUSA in contempt, Dkt. 18, and a motion for "full awarding of all records," Dkt. 21.  The Court denied those motions, *see* Minute Order (Nov. 21, 2018); Minute Order (Dec. 22, 2018), Minute Order (Sept. 30, 2019), and the EOUSA eventually moved dismiss or, in the alternative, for summary judgment, Dkt. 26.

This Court denied that motion without prejudice.  *See* Minute Order (May 20, 2020).  The EOUSA then renewed its motion for summary judgment, Dkt. 34, and submitted in support a declaration from Natasha Hudgins, an attorney-advisor on the EOUSA's FOIA and Privacy Act team, Dkt. 34-2 (Ex. 1), along with materials from the administrative proceedings before the EOUSA and the OIP, Dkt. 34-3 (Ex. 2).  Bernegger opposed that motion, Dkt. 36, and, after this Court issued a *Fox-Neal* order warning Bernegger of the consequences of failing to respond in full to the EOUSA's assertions, Dkt. 37, Bernegger supplemented that opposition with two further filings, Dkt. 38; Dkt. 39, and the EOUSA filed a reply brief, Dkt. 40.

## II.  LEGAL STANDARD

"FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56." *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 268 (D.D.C. 2016).  To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In a FOIA action, the Court may award summary judgment to an agency solely on the basis of information provided in [its] affidavits or declarations" so long as they "'are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Thomas v. FCC*, 534 F.

Supp. 2d 144, 145 (D.D.C. 2008) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  The Court reviews the agency's determinations *de novo*, and the agency bears the burden of sustaining its actions.  5 U.S.C. § 552(a)(4)(B).

### III.  ANALYSIS

The EOUSA makes only one argument in favor of summary judgment.  "[B]ecause Plaintiff failed to pay advance duplication fees and failed to demonstrate that he is entitled to a public interest waiver of those fees," the EOUSA maintains that Bernegger may not challenge the adequacy of its response to his FOIA request in this Court.  Dkt. 34-1 at 2.

FOIA authorizes each agency to "promulgate regulations . . . specifying the schedule of fees applicable to the processing of requests . . . and establishing procedures and guidelines for determining when such fees should be waived or reduced."  5 U.S.C. § 552(a)(4)(A)(i).  Under the implementing regulations promulgated by the Department of Justice, most requesters must pay "[d]uplication fees" to cover the cost of processing their requests.  28 C.F.R. § 16.10(c)(2); *see id.* § 16.10(b)(3) (defining "[d]uplication" as "reproducing a copy of a record, or of the information contained in it, necessary to respond to a FOIA request").  And, as relevant here, if the estimated duplication costs exceed $250, the agency "may require that the requester make an advance payment up to the amount of the entire anticipated fee *before beginning to process the request*."  *Id.* § 16.10(i)(2) (emphasis added).  "Requesters may," however, "seek a waiver of fees by submitting a written application" showing, among other things, that "disclosure of the requested information is in the public interest."  *Id.* § 16.10(k)(1).  Such a request "should be made when the request is first submitted" and "should address the [relevant] criteria."  *Id.* § 16.10(k)(4).  "FOIA requesters generally cannot obtain judicial review of their FOIA claims until they either pay any fees associated with their records request or establish their entitlement

to a fee waiver." *Marino v. Dep't of Just.*, 993 F. Supp. 2d 14, 18 (D.D.C. 2014).

Here, the EOUSA estimated that the total fee to be charged would exceed $250. Dkt. 34-3 at 8 (Ex. 2 at 8). As a result, absent a fee waiver, the office was not required to process the request until it received payment of the total, estimated "fee to be charged." 28 C.F.R. § 16.10(i)(2). There is no dispute, moreover, that Bernegger never made the required prepayment. Accordingly, the sole question presented by the pending motion is whether Bernegger was entitled to a fee waiver. To make that showing, Bernegger must demonstrate that "disclosure of the [requested] information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). As noted above, the implementing regulations require that Bernegger establish (among other things) that "disclosure of [the requested] records would add [something] new to the public's understanding" of the relevant government entities, *Marino*, 993 F. Supp. 2d at 20, and that he has the "ability and intention to effectively convey or disseminate the requested information to the public," *Prison Legal News v. Lappin*, 436 F. Supp. 2d 17, 26 (D.D.C. 2006) (quoting *Judicial Watch v. Dep't. of Just.*, 185 F. Supp. 2d 54, 62 (D.D.C. 2002)).[1] Bernegger has made neither showing here.

As an initial matter, Bernegger argues that the EOUSA's motion "must be denied as [the agency] failed to perform an adequate search." Dkt. 36 at 5. But that contention, along with

---

[1] Although the Department of Justice has since amended the relevant regulations, those amendments were largely meant "to streamline the description of the factors to be considered when making fee waiver determinations," Revision of Department of Justice Freedom of Information Act Regulations, 82 Fed. Reg. 725-01 (Jan. 4, 2017), and did not substantively alter either of the requirements relevant to the Court's analysis. *See also* Department of Justice Freedom of Information Act Regulations, 84 Fed. Reg. 16775-01 (Apr. 23, 2019) ("[A]dopt[ing] without change the interim final rule amending the Department's regulations under the Freedom of Information Act (FOIA) that was published on January 4, 2017.").

Bernegger's demand for a *Vaughn* index, ignores the plain text of the governing regulation, which provides that the relevant Department of Justice component need not "begin[] to process the request" until the payment is made.[2]  28 C.F.R. § 16.10(i)(2).  The EOUSA, accordingly, need not defend the adequacy of its search, unless Bernegger can show that he was entitled to a fee waiver.  *See Marino*, 993 F. Supp. 2d at 18.

In an effort to meet that burden, Bernegger invokes the "massive corruption" that he claims to have witnessed during his trial.  Dkt. 38 at 3; *see also id.* at 4 (referencing "a massive fraud on a federal court in [his] criminal case").  He claims, in particular, that the prosecutors removed Count One of the indictment from the verdict form, "without the Judge's knowledge or permission," and that, as result, the jury was never allowed to consider that charge.  *Id.* at 3-4.  That contention, however, is far from new, and there is no reason to believe that the records that he seeks are "likely to contribute significantly to public understanding of the . . . activities of the" prosecutors in Bernegger's case or "the government" more generally.  5 U.S.C. § 552(a)(4)(A)(iii).  As the United States District Court for the Northern District of Mississippi explained over six years ago:

> In a discussion out of hearing of the jury, attorneys for both defendants and the court discussed whether the Form of the Verdict should include a space for the Jury to consider Count One as to Mr. Bernegger.  Both defendants and the court agreed that Count One did not charge Mr. Bernegger with a crime. No one disputed that the Jury had been told—much earlier in the trial—that Mr. Bernegger had been charged in Count One. The court concluded that the best way to handle the situation was to provide a Form of the Verdict to the Jury that did not include a blank to find Mr. Bernegger guilty as to Count One. Mr.

---

[2]  The regulatory text addresses a second issue as well:  In its correspondence with Bernegger, the EOUSA observed that, "[i]n most instances, the first 100 pages to duplicate and the first two hours to search for records . . . , will be provided . . . free of charge."  Dkt. 34-3 at 4 (Ex. 2 at 4). Here, however, the office was under no obligation even to "begin[] to process the request" and, thus, was not required to release even the first 100 pages of responsive materials.  28 C.F.R. § 16.10(i)(2).  And Bernegger does not allege that he was entitled to receive the first 100 pages without either signicantly reducing the scope of his request or paying the fee.

> Bernegger has alleged, many times, that this issue was handled entirely off the record – and thus constituted a "fraud upon the court." However, the trial record of Mr. Bernegger's criminal case paints an entirely different picture.

*In re Bernegger*, 2015 WL 8347587 at *1. Quoting the transcript from Bernegger's criminal trial, the court noted that "[c]ounsel for Mr. Bernegger was . . . 'elated' to hear that [he] was not charged in Count One—and asked that the court give the [j]ury an instruction making that clear," which the trial court did. *Id*. at *4. Finally, the Northern District of Mississippi observed that, "throughout the rest of the proceedings, Mr. Bernegger's counsel, codefendant's counsel, this court, and later, the Fifth Circuit—all concluded that the removal of Count One from the [j]ury's consideration was proper, and indeed inured to Mr. Bernegger's benefit." *Id.*

Under these circumstances, Bernegger faces a high bar in attempting to show that the records he seeks are "likely to contribute significantly to public understanding of the operations or activities of the government," 5 U.S.C.A. § 552(a)(4)(A)(iii), and he does not come close to meeting that burden. Indeed, rather than offer any reason to question the well-documented decision of the U.S. District Court for the Northern District of Mississippi, Bernegger offers nothing more than unsupported conclusions and ad hominem attacks. The law is clear, however, that "[r]equests based on nothing more than bare allegations of malfeasance, unsupported by the evidence, do not have enough informative value to merit a fee waiver." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 602 F. Supp. 2d 121, 128 (D.D.C. 2009) (quotation marks omitted). Thus, even assuming that a fraud of the nature that Bernegger alleges would constitute a matter of public interest, his filings lack any reasonable basis to conclude that the requested "documents would increase public knowledge of the functions of government." *Pub. Emps. for Env't Resp. v. U.S. Dep't of Com.*, 968 F. Supp. 2d 88, 101 (D.D.C. 2013) (quoting

10

*CREW v. U.S. Dep't of Health & Human Servs.*, 481 F. Supp. 2d 99, 109 (D.D.C. 2006)).[3]

More generally, Bernegger appears interested in finding some evidence—whatever it might be—that might upset his criminal conviction. His original FOIA request declared that "the federal prosecutors" who worked his case were "corrupt" and maintained that he "did not have a trial by jury" due to their various alleged misdeeds. Dkt. 34-3 at 3 (Ex. 2 at 3). And, in appealing the EOUSA's fee estimate, Bernegger argued that he "should not have to pay for the documents at all" because he needed the information "in regards to a criminal complaint [he] filed with the proper federal authorities" against one of those prosecutors. *Id.* at 12 (Ex. 2 at 12). "A requester's private interest," however, "is not relevant to the fee waiver analysis, and an attack on a criminal conviction is a private interest." *Banks v. Dep't of Just.*, 605 F. Supp. 2d 131, 139 (D.D.C. 2009) (collecting cases); *see also Marino*, 993 F. Supp. 2d at 20 n.5. This is because "[i]nformation related to one individual, such as the requested information at issue here, is not likely to" "increase public knowledge of the functions of government." *Pub. Emps. for Env't Resp.*, 968 F. Supp. 2d at 101. Bernegger, moreover, has had ample opportunity to pursue those claims, so much so that the Northern District of Mississippi imposed a pre-screening requirement to prevent him from "abusing judicial process by filing frivolous and malicious pleadings, motions, and communications." *In re Bernegger*, 2015 WL 8347587, at *11–12.

---

[3] Bernegger submitted, as a supplement to his opposition to the EOUSA's motion for summary judgment, an affidavit from someone who describes himself as an eyewitness to Bernegger's criminal trial. *See* Dkt. 39. But "the Court's review of a fee waiver denial . . . is limited to the record that was before the agency at the time of the request," *Marino*, 993 F. Supp. 2 at 19, and there is no indication that Bernegger submitted this affidavit to either the EOUSA or the OIP. The Court cannot, accordingly, consider its contents in resolving the motion before it. But, even if the Court were to consider the affidavit, nothing contained in that document undermines the finding of the U.S. District Court for the Northern District of Mississippi "that the removal of Count One from the [j]ury's consideration was proper, and indeed inured to Mr. Bernegger's benefit," *In re Bernegger*, 2015 WL 8347587, at *4.

Bernegger's request for a fee waiver fails for a second reason as well: he has failed to demonstrate that he has "ability and intention to effectively convey or disseminate the requested information to the public." *Prison Legal News*, 436 F. Supp. 2d at 26. Here again, Bernegger offer no colorable argument in his opposition to the EOUSA's motion. To be sure, Bernegger maintained before the OIP that there were "3 news media outlets [that] wish[ed] to conduct on a story on [that prosecutor's] fraud and lies." Dkt. 34-3 at 12 (Ex. 2 at 12). But "[f]ee-waiver applicants must support their claims with 'reasonable specificity,'" including with respect to the proposed means of dissemination of the requested information. *Cause of Action v. FTC*, 799 F.3d 1108, 1117 (D.C. Cir. 2015) (quoting *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003)). Indeed, the D.C. Circuit has held that an assertion of the kind Bernegger made to the OIP is insufficiently specific, even though, unlike in this case, "the subject matter" in that case was "undeniably . . . of public interest." *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988). In reaching that conclusion, the court of appeals explained that, because the requester "failed to identify the newspaper company to which he intended to release the requested information, his purpose for seeking the requested material, or his professional or personal contacts with any major newspaper companies," he "was not entitled to the fee waiver." *Id.*; *cf. Jud. Watch*, 326 F.3d at 1314 (finding requester had satisfied its burden on this point by explaining "in detailed and non-conclusory terms . . . exactly how and to whom it will disseminate the information it receives"). In this case, Bernegger's failure to elaborate on his plans to disseminate the requested information further supports the OIP's decision denying his waiver request.

Finally, the Court is unpersuaded by Bernegger's contention that the EOUSA's motion fails because it does not separately address his Privacy Act claim. *See* Dkt. 36 at 12. The

12

governing Department of Justice regulations make clear that the same fees that apply under FOIA apply for purposes of the Privacy Act. *See* 28 C.F.R. § 16.49. Indeed, because the Privacy Act regulations simply incorporate the FOIA rules relating to "duplication fees," *id.*, courts often analyze a litigant's failure to "to pay duplication fees" "with respect to his FOIA and Privacy Act requests" as a singular issue, *Banks*, 605 F. Supp. 2d at 139. Because no daylight exists between the two regulatory regimes, they require the same result.

The Court, accordingly, concludes that the EOUSA permissibly declined Bernegger's request for a fee waiver and, having done so, permissibly declined to process his FOIA and Privacy Act requests.[4]

## CONCLUSION

For the foregoing reasons, the Court will grant the EOUSA's the motion for summary judgment and will enter judgment in Defendant's favor.

A separate order shall issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: February 25, 2022

---

[4] A portion of Bernegger's opposition is styled as a "Motion to Strike," and takes umbrage with the EOUSA's statement in the background section of its brief that Bernegger threatened to sue the EOUSA in a letter responding to its fee estimate. Dkt. 36 at 2–4. The relevant passage of the EOUSA's motion states that "Plaintiff closed" his letter "by demanding that all of the documents be sent to him within five business days and threatened to sue EOUSA if it did not do so." Dkt. 34-1 at 4–5. The Court has reviewed the email at issue, which the EOUSA attached to its motion for summary judgment, and concludes that the EOUSA accurately described its contents. *See* Dkt. 34-3 at 29 (Ex. 2 at 29) ("Given what has happened here, I want all the documents sent out to me within 5 business days. Otherwise I have clear grounds to file another lawsuit against EOUSA."). The Court will, accordingly, deny Bernegger's motion to strike.